**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Maxwell Rangel JOELSON, aka El Santero, Defendant–Appellant.**

**No. 91–50370.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1993.

Decided Oct. 12, 1993.

Certiorari Denied Dec. 6, 1993.

See 114 S.Ct. 620.

Michael Linfield, Pasadena, CA, for defendant-appellant.

Brenda K. Sannes, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

176

Before: FLETCHER, POOLE and THOMPSON, Circuit Judges.

POOLE, Circuit Judge:

Maxwell Rangel Joelson appeals his conviction and sentence, following a jury trial, for various drug offenses. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We affirm Joelson's conviction, but we vacate his sentence and remand for re-sentencing because the district court improperly increased his offense level by two levels under U.S.S.G. § 2D1.1(b)(2).

I

In August 1990, the government charged Joelson with one count of conspiracy to import approximately 770 kilograms of cocaine in violation of 21 U.S.C. §§ 952 and 963, one count of conspiracy to possess and to distribute approximately 770 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, one count of aiding and abetting the importation of approximately 770 kilograms of cocaine in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2, and one count of possession with intent to distribute approximately 770 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).

In February 1991, Joelson was convicted by a jury on all counts after an eight-day trial at which he did not testify. During the trial, the government presented evidence that Joelson (1) arranged with a Drug Enforcement Administration ("DEA") confidential informant to import approximately 800 to 1000 kilograms of cocaine from Guatemala and (2) received the cocaine in a restaurant parking lot. Many of the meetings and telephone calls between Joelson and the informant were either tape recorded or surveilled by DEA agents.

After the government rested, Joelson's counsel informed the court that Joelson wanted new counsel appointed because "he believes that there are conflicts that have arisen in my representation of him; specifically, with reference to certain decisions about evidence to be put on or not to be put on." Joelson then told the court that "[w]ell, your honor, I just seem to be going in differ- ent directions, just not getting along." The court responded:

> Have you considered the fact that your lawyer is an experienced trial lawyer, and he indeed is, and he's a person who has been in my court many times, and I am personally aware of his experience and his talents and the soundness of his advice, and have you considered the fact that it might be well for you and you might be well-advised to listen to his advice?
>
> The advice he's giving you, whatever it is, is very probably sound advice. All of that is based on my knowledge of his experience and his talents and his interest in his client.

The court then remarked that the motion was untimely and that he would allow substitution only if Joelson had another lawyer ready to proceed. Joelson responded that he did not have another lawyer. Joelson's attorney then requested an in camera hearing so that Joelson could tell the court the reasons he wanted a new attorney. Joelson then informed the court that he wanted his attorney to call several witnesses, that he wanted to testify, and that his attorney did not want him to testify. The attorney explained that his decisions were tactical. The court then addressed Joelson:

> Well, now, Mr. Joelson, you, of course, have a right to take the stand and testify. But whether a defendant should take the stand and testify is a matter of some strategy, and your lawyer is certainly in a better position to advise you than you are to advise yourself on that subject.
>
> I would strongly suggest that whatever his advice is, if you want to testify and he says no, you should not. Or if it's the other way around even, you ought to follow his advice because for a defendant to take the stand and testify is to subject himself to cross examination.
>
> And perhaps if your lawyer has told you that his advice to you is to not take the stand, perhaps he feels and may have a good reason for feeling that you'd be slaughtered on cross examination and would do yourself no good at all.
>
> There's such a thing as crucifying yourself when you take the stand and testify.

So once again, I can only say to you that your lawyer is an experienced lawyer and you ought to follow his advice.

After addressing Joelson's disagreement about the witnesses, the court further stated to Joelson:

That leaves us then only with whether or not you should take the stand and testify and, once again, you have a right to do so if you want to.

But my sound advice to you is to follow your lawyer's advice. And if he says do not take the stand, I think you ought to follow his advice.

So please understand that I am trying to bring about a fair trial in this case, fairness to you and fairness to the government, and I have to indulge in a balance of things in order to try to see to it that fairness is brought about.

I certainly am not trying to take any steps that would lessen your ability to have a trial, so please understand that, and I am going to give you five minutes or so to talk with your lawyer and to finalize what you're going to do, and then I will take the bench again and see where we go from here.

The court then denied Joelson's motion for new counsel.

After the recess, defense counsel stated that he would not be presenting any witnesses. The court never questioned Joelson further about testifying, and Joelson did not ask to testify or object to his counsel's statement.

Prior to sentencing, Joelson obtained new counsel and filed a motion for new trial on the ground that there was newly discovered evidence of duress, that he had been denied the right to testify, and that he was denied the effective assistance of counsel by his counsel's refusal to let him testify or present a duress defense. The district court denied the motion.

During the sentencing hearing, Joelson objected to a two-level increase of his offense level under U.S.S.G. § 2D1.1(b)(2) for the use of a private aircraft in importing the cocaine. The district court increased the offense level by two levels pursuant to section 2D1.1(b)(2) and sentenced Joelson on June 17, 1991 to concurrent life sentences on each of the four counts. Joelson timely appealed on June 21, 1991.

## II

Joelson contends that he was denied his constitutional right to testify when his attorney refused to allow him to testify. He argues that because he informed the court that he wanted to testify and because the district court injected itself into the decision as to whether he would testify, the district court should have obtained an on-the-record waiver of his right to testify.

An accused's right to testify is a constitutional right of fundamental dimension. *See Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 2710, 97 L.Ed.2d 37 (1987); *United States v. Edwards*, 897 F.2d 445, 446–47 (9th Cir.) (applying *United States v. Martinez*, 883 F.2d 750 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991)), *cert. denied*, 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990); *Martinez*, 883 F.2d at 756. Because the right is personal, it may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional. *Edwards*, 897 F.2d at 446; *Martinez*, 883 F.2d at 756.

Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify. *Edwards*, 897 F.2d at 446–47. The trial court " 'has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred.' " *Id.* at 446 (quoting *Martinez*, 883 F.2d at 760). Rather, if the defendant wants to testify, he can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer. *Martinez*, 883 F.2d at 761. Thus, waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so. *Edwards*, 897 F.2d at 446 (citing *Martinez*, 883 F.2d at 760).

Here, unlike the defendants in *Martinez* and *Edwards*, Joelson made an on-the-record request to testify. *Cf. Edwards*, 897 F.2d at 446; *Martinez*, 883 F.2d at 752. Moreover, after Joelson's request, the district court encouraged Joelson to follow his attorney's advice. Joelson argues that these circumstances imposed upon the court at least the duty to ask Joelson after he conferred with his attorney whether he wanted to testify.

The court's extensive discussion with Joelson about following his attorney's advice is troubling. As the *Martinez* court observed in holding that a court has no obligation to make an on-the-record determination as to whether a defendant wants to testify, judicial interference with this strategic decision poses a danger that "the judge will appear to encourage the defendant to invoke or waive this right.... This danger is of great significance because the right not to testify counterpoises the right to testify, and the exercise of one is the waiver of the other." 883 F.2d at 756 (citations omitted); *see also Edwards*, 897 F.2d at 447 n.* (discussing the concerns raised in *Martinez* regarding excessive interference by the district court in the defendant's decision whether to testify).[1]

■ The district court did, however, tell Joelson that he had the right to testify and gave him an opportunity to confer with his attorney to finalize his decision. After Joelson conferred with his attorney, the attorney stated that the defense would not be presenting any evidence, and Joelson did not object or ask to testify. Although the district court's advice perhaps was inadvisable, it was not so egregious that Joelson's ability to knowingly and intentionally waive his right to testify was impaired.

■ This conclusion is appropriate given the nature of the right to testify, which essentially is a strategic trial decision with constitutional implications. *See Martinez*, 883 F.2d at 759–61. In contrast, a trial court's interference with personal rights that a defendant must waive explicitly, such as the right to go to trial or plead guilty or the right to be represented by counsel, would be more troubling. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 275–78, 63 S.Ct. 236, 240–41, 87 L.Ed. 268 (1942); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Accordingly, we hold that under *Edwards*, Joelson is presumed to assent to his attorney's tactical decision not to have him testify. *See* 897 F.2d at 446–47.

### III

■ Joelson contends that the district court erred by denying his motion for a new trial based on newly discovered evidence of duress. We review the district court's denial of a motion for a new trial for an abuse of discretion. *United States v. McKinney*, 952 F.2d 333, 335 (9th Cir.1991).

■ In order for newly discovered evidence to warrant a new trial, Joelson must show that

(1) the evidence is newly discovered and was unknown to [him] at the time of trial, (2) the evidence is material, not merely cumulative or impeaching, (3) the evidence will probably produce an acquittal, and (4) failure to learn of the evidence sooner was not due to a lack of diligence.

*United States v. Davis*, 960 F.2d 820, 824–25 (9th Cir.) (citation omitted) (holding that evi-

---

1. In *Martinez*, the court addressed only the issue of what constitutes an effective waiver by a defendant of his right to testify. 883 F.2d at 751–61. The panel subsequently vacated its opinion and reversed the conviction because jury selection was conducted by a magistrate judge, rather than a district court judge. *Id.* at 1471. Before the *Martinez* panel vacated its opinion, the *Edwards* panel relied on *Martinez*'s "broad[ ] reasoning" to address whether the *Martinez* rule also applied to defendants who asserted that they did not know that they had a right to testify.

*Edwards*, 897 F.2d at 446–47; *cf. Martinez*, 883 F.2d at 761 (noting that defendant knew he had "a right to be heard if he chose").

Because the *Martinez* court vacated its opinion entirely, the opinion has no precedential effect, except to the extent that it was adopted by the *Edwards* court. The *Martinez* court's discussion of the rationale behind the rule is persuasive, however, especially its discussion of the importance of the court not intruding on the defendant's decision.

dence that renders testimony totally incredible forms basis for new trial motion), *cert. denied*, —— U.S. ——, 113 S.Ct. 210, 121 L.Ed.2d 150 (1992).

In order to establish a prima facie case of duress, the accused must show that (1) he acted under an immediate threat of death or serious bodily injury; (2) his fear was well grounded; and (3) there was no reasonable opportunity to avoid or escape the threatened harm. *United States v. Asuncion*, 973 F.2d 769, 772 (9th Cir.1992); *United States v. Kinslow*, 860 F.2d 963, 965–66 (9th Cir.1988), *cert. denied*, 493 U.S. 829, 110 S.Ct. 96, 107 L.Ed.2d 60 (1989).

The basis for Joelson's new trial motion is a declaration by Dilsia Pagaoga, the wife of Albert Cano (one of Joelson's coconspirators who disappeared), that during 1989 and 1990, she "heard many conversations where drug people . . . commented that Maxwell Joelson owed them money and that if he did not help them in their narcotics activities they would kill him. . . . I am aware he was forced under death threats to participate against his will."

Pagaoga's declaration does not form the basis for a new trial motion. First, the evidence was not unknown to Joelson at the time of trial. *See Davis*, 960 F.2d at 824–25. Joelson's attorney spoke to Pagaoga before trial and determined that it would not be advisable to call her. Second, the evidence does not establish that Joelson acted under immediate threat of death or serious bodily injury or that there was no reasonable opportunity to avoid or escape the threatened harm. *See Asuncion*, 973 F.2d at 772. The evidence was not likely to result in an acquittal, *see Davis*, 960 F.2d at 824–25, and the district court did not abuse its discretion by denying Joelson's motion for a new trial. *See McKinney*, 952 F.2d at 335.

### IV

Joelson contends that he was denied the effective assistance of trial counsel because his counsel refused to allow him to testify, refused to call certain witnesses, and failed to make any closing arguments regarding count four.

The record before us is insufficient to enable us to evaluate Joelson's claims of ineffective assistance regarding counsel's refusal to allow him to testify and to call witnesses. Joelson may raise these claims in a collateral proceeding under 28 U.S.C. § 2255 in order to develop a record regarding his counsel's alleged incompetence. *See United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir.1991). Moreover, we decline to review Joelson's claim of incompetence of counsel during closing argument. The pertinent inquiry in evaluating claims of ineffective assistance is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Evaluating whether counsel's errors deprived Joelson of a fair trial and a reliable verdict will be facilitated if his claim of incompetence in closing argument is examined in a single collateral proceeding in the context of his other claims of ineffectiveness.

### V

Joelson contends that the district court erred by increasing his offense level by two levels under U.S.S.G. § 2D1.1(b)(2) for use of a private aircraft in importing the cocaine. We review de novo whether the district court erred in its construction and interpretation of section 2D1.1(b)(2). *See United States v. Carvajal*, 905 F.2d 1292, 1294 (9th Cir.1990).

U.S.S.G. § 2D1.1(b)(2) provides for a two-level increase in the defendant's offense level if a defendant is convicted of importing a controlled substance "under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance."

Here, the cocaine was delivered to a landing strip in Guatemala in an Arrow Commander one thousand, which was not a "regularly scheduled commercial air carrier." The cocaine was unloaded, and DEA agents took the cocaine, stored it, and ultimately

**180**

flew it into the United States on a commercial Pan Am flight.

■ Joelson argues, and we agree, that the plain language of section 2D1.1(b)(2) should be given effect. The cocaine was imported from the landing strip in Guatemala to the United States. Although a private plane flew the cocaine to Guatemala, a commercial Pan Am air carrier "was used to import" the cocaine into the United States. *See* U.S.S.G. § 2D1.1(b)(2). Stretching the definition of "used to import" to incorporate any use of a private airplane, regardless of whether it was used during the actual importation of the cocaine, flies in the face of the "plain language" of section 2D1.1(b)(2). *See United States v. Dadanian*, 818 F.2d 1443, 1448 (9th Cir.1987) (discussing principles of statutory construction for criminal statutes; plain meaning of statute controls absent clear legislative intent to the contrary), *modified on other grounds*, 856 F.2d 1391 (9th Cir. 1988). Moreover, nothing in the commentary to section 2D1.1(b)(2) compels a contrary conclusion. *See United States v. Bachiero*, 969 F.2d 733, 734 (9th Cir.1992) (per curiam) (this court must apply the commentary to Guidelines sections unless it is inconsistent with the text of the Guidelines); *United States v. Anderson*, 942 F.2d 606, 612–14 (9th Cir.1991) (en banc) (although plain language of Guideline prevails over inconsistent commentary, court must consider the Guideline and commentary together and construe them so as to be consistent, if possible, with each other and with the Part as a whole).

■ The government also argues that a two-level increase in the offense level under section 2D1.1(b)(2) was proper because the coconspirators intended to use a private airplane to import the cocaine. We disagree. Section 2D1.1(b)(2) provides for a two-level increase only if an aircraft other than a regularly scheduled commercial air carrier was used to import the cocaine. It does not provide for an increase when the parties merely intended to use a private airplane.

Accordingly, we vacate Joelson's sentence and remand for resentencing without the two-level increase.

**AFFIRMED in part; VACATED and REMANDED in part.**