# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CHARLES LEE GILLENWATER, II,
*Defendant-Appellant*.

No. 11-30363

D.C. No.
2:11-cr-00121-
RMP-1

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CHARLES LEE GILLENWATER, II,
*Defendant-Appellant*.

No. 12-30027

D.C. No.
2:11-cr-00121-
RMP-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, Chief District Judge, Presiding

Argued and Submitted
February 6, 2013—Seattle, Washington

Filed June 17, 2013

Before: Raymond C. Fisher, Ronald M. Gould,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Criminal Law

The panel vacated the district court's order finding a criminal defendant incompetent to stand trial after ordering a psychological examination and conducting a pretrial competency hearing pursuant to 18 U.S.C. §§ 4241 and 4247, and remanded for a new competency hearing.

The panel held that (1) a defendant has a constitutional and statutory right to testify at his pretrial competency hearing; (2) only the defendant, not counsel, can waive the constitutional right to testify; (3) the district court has an obligation to admonish a defendant that his disruptive conduct may result in his removal from the courtroom and waiver of his right to testify; and (4) the denial of the defendant's right to testify was not harmless because the panel did not know to what the defendant may have testified.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Dan B. Johnson, Spokane, Washington, for Defendant-Appellant.

Timothy J. Ohms, Assistant United States Attorney, Spokane, Washington, for Plaintiff-Appellee.

**OPINION**

PAEZ, Circuit Judge:

Defendant Charles Lee Gillenwater, II, appeals the district court's order finding him incompetent to stand trial. The district court made its determination after ordering a psychological examination of Gillenwater and conducting a pretrial competency hearing pursuant to 18 U.S.C. §§ 4241, 4247. At the hearing, Gillenwater sought to testify against the advice of his counsel. This led to a disruptive outburst from Gillenwater, which prompted the district court to remove him from the courtroom. As a result, Gillenwater was not permitted to testify during the hearing. On appeal, Gillenwater contends that he was denied his constitutional right to testify at the hearing and thus the competency determination must be vacated. We agree and therefore vacate and remand for a new competency hearing.

We hold that (1) a defendant has a constitutional and statutory right to testify at his pretrial competency hearing; (2) only the defendant, not counsel, can waive the constitutional right to testify; (3) the district court has an obligation to admonish a defendant that his disruptive conduct may result in his removal from the courtroom and

waiver of his right to testify; and (4) the denial of Gillenwater's right to testify was not harmless because we do not know to what Gillenwater may have testified.

## I.

In August 2011, the Grand Jury for the Eastern District of Washington returned an indictment charging Gillenwater with two counts of Transmission of Threatening Interstate Communications in violation of 18 U.S.C. § 875(c). Subsequently, the government filed a superseding indictment adding a third count of Transmission of Threatening Communication by U.S. Mail in violation of 18 U.S.C. § 876(c). The Federal Defender's Office was appointed to represent Gillenwater. After the federal public defender moved to withdraw, the district court appointed attorney Frank Cikutovich to represent Gillenwater.

In September 2011, after receiving several letters from Gillenwater regarding the federal defender and hearing from Cikutovich and Gillenwater in court, the district court directed the magistrate judge to appoint additional counsel for Gillenwater for the limited purpose of meeting with him and reporting to the court whether there was a need for a competency hearing. Terrence Ryan, the appointed attorney, met with Gillenwater and subsequently recommended that the court conduct a competency hearing. The district court ordered a psychological evaluation and a competency hearing.[1]

---

[1] After the district court ordered a psychological evaluation, Gillenwater filed two pro se motions requesting that his counsel object to the hearing and that he be evaluated at a nearby Air Force base. The court denied those motions. On appeal, Gillenwater has explicitly waived any

Gillenwater was ultimately transferred to a federal detention center for psychological evaluation by Dr. Cynthia Low, a PhD psychologist. Dr. Low was not able to fully interview Gillenwater or have him perform a battery of psychiatric tests because Gillenwater was uncooperative. Nonetheless, Dr. Low prepared a report on the basis of her clinical interviews of Gillenwater, observations of his behavior and a review of Gillenwater's legal and medical records, concluding that Gillenwater "suffers from a mental disorder, specifically, Delusional Disorder, Persecutory Type, that could substantially impair his ability to assist counsel in his defense." Dr. Low emphasized that Gillenwater's "description of his case focused exclusively on the supposed government conspiracy" to silence Gillenwater's reporting of Occupational Safety and Health Act ("OSHA") violations that he believes he witnessed. Dr. Low concluded that Gillenwater's disorders impaired his ability to work with his counsel to defend against the charges.

Dr. Low identified several manifestations of Gillenwater's paranoid delusions. She opined that Gillenwater believes that "his case is highly unusual, in that it involves a corporate crime and a cover up." Dr. Low reported that when Gillenwater was working on a construction project at a Las Vegas casino, he believed that he observed asbestos, and that he had taken increasingly drastic steps to report and induce official action on what he saw as an OSHA violation. According to Dr. Low's report, Gillenwater believes that he is the victim of "tens of thousands" of computer attacks, that he is under constant

---

argument with respect to these motions—the subject of appeal No. 11-30363, also before us—and limited his arguments to those raised in the current appeal, No. 12-30027.

surveillance, that people from Nevada's OSHA enforcement agency and the casino are after him, and that newspapers were bought off from reporting on his allegations. Dr. Low further described how Gillenwater had accused his attorneys (first the federal public defender and then Cikutovich) of committing crimes and the district judge of violating the Code of Judicial Ethics.

On the basis of law enforcement records, Dr. Low recounted how Gillenwater had contacted numerous state and federal officials including U.S. Senator Crapo, claiming that the Senator's staff was in danger because powerful people would try to kill staff members and then frame Gillenwater. Dr. Low also described how Gillenwater contacted a Federal Protective Services agent and claimed that the "FBI won't protect me! Hackers, 10,000 cyber attacks, Psy-Ops, Caesars lawyers bringing people up to Idaho who are involved in this, to say 'Hi Chuck' and walk away. I've been physically, emotionally, financially destroyed and still under attack from Caesars, Nevada and Feds!!!!!!" Dr. Low also noted that Gillenwater asked Cikutovich to subpoena 50-plus witnesses for his defense, including Obama Administration cabinet members, in relation to the alleged conspiracy. At the competency hearing, Dr. Low testified that Gillenwater apparently wanted to be arrested "so that he could take this conspiracy issue to trial."

On January 6, 2012, the district court held a competency hearing pursuant to 18 U.S.C. §§ 4241(c), 4247(d). The government submitted Dr. Low's report into evidence, called Dr. Low as a witness, and supported her evaluation and recommendation that Gillenwater receive competency restoration treatment. Without presenting any other evidence,

the government rested. The district court then inquired of the defense and the following colloquy occurred:

> THE COURT: All right. Mr. Cikutovich?
>
> MR. CIKUTOVICH: Your Honor, at this point, on behalf of Mr. Gillenwater, we don't have any evidence to present to the Court. Mr. Gillenwater would request to testify at this hearing. But as his counsel, it's my opinion and advice that he not be put under oath and testify.
>
> THE COURT: All right. Then I think we will just go to argument.

At this point, the transcript reflects that Gillenwater was whispering loudly to Cikutovich and that the court had to instruct the court reporter not to report his remarks. After hearing the government's closing summation, the district court again inquired of the defense:

> THE COURT: Thank you. Mr. Cikutovich?
>
> MR. CIKUTOVICH: Thank you, Your Honor. If it pleases the Court and Counsel, we don't have any contradictory evidence other than what's been provided by Dr. Low. My client has indicated that he wishes to testify at this hearing.
>
> THE DEFENDANT: Yes.

MR. CIKUTOVICH: I have advised him that –

THE DEFENDANT: Because you're a criminal.

MR. CIKUTOVICH: – that it would not be in his best interest –

THE DEFENDANT: You're a criminal.

MR. CIKUTOVICH: – to be under oath.

THE COURT: Mr. Gillenwater, that's enough.

THE DEFENDANT: Then get me the fuck out of here.

THE COURT: Fine.

THE DEFENDANT: The exculpatory evidence clears me.

THE COURT: Then you can go out.

THE DEFENDANT: The exculpatory evidence clears me of this fucking diagnosis.

THE COURT: That's enough.

THE DEFENDANT: You're not going to be a jury – a judge – you're not going to be a judge much longer.

THE COURT: That's enough.

THE DEFENDANT: I'll wait – I'll wait for the Republicans to come back. The exculpatory evidence clears me of that diagnosis and these charges. You will not be a judge much longer. I'll wait for Republicans.

(The marshals escorted Mr. Gillenwater from the courtroom.)

THE COURT: Mr. Cikutovich, what were you saying?

MR. CIKUTOVICH: Thank you, Your Honor. For the record, after Mr. Gillenwater's outburst, the marshals have removed him from the courtroom. And to finish the argument on behalf of Mr. Gillenwater, he has been asking me for permission to testify at this hearing. And it is my opinion that it would not be in his interests to be under oath in a federal courtroom, being recorded, while he is still charged with federal offenses; and therefore, I have not called him as a witness based on that reason. With no evidence to contradict Dr. Low, it's the Court's decision whether he can assist counsel . . . .

The district court issued an oral ruling finding that Gillenwater did not appear to understand the charges or the

court process and found that Gillenwater was not competent to assist his counsel in defending against the charges.

Also on January 6, 2012, but prior to the hearing, Gillenwater filed a pro se motion to dismiss Cikutovich as his counsel. Several days later, Gillenwater filed another pro se motion seeking the same relief. On January 9, 2012, the district court entered an order denying Gillenwater's two pro se motions and declaring Gillenwater incompetent to stand trial, reiterating the court's oral ruling and remanding him to the Attorney General's custody for 60 days.

The district court concluded:

> In light of Dr. Low's report and testimony, the information present in the file in this matter, and the Court's observation of Mr. Gillenwater's behavior and demeanor in the courtroom, the Court finds that the preponderance of the evidence supports that Mr. Gillenwater "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to . . . assist properly in his defense." 18 U.S.C. § 4241(d). The Court further finds that Defendant waived his continued presence at the hearing by persisting in disruptive behavior after the Court warned him that he could be removed for disruptive behavior and by the Defendant eventually declaring "remove me." *See* Fed. R. Crim. P. 43(c)(1)(C) (a court may exclude a defendant from being present even at trial when he

persists in disruptive conduct that justifies exclusion from the courtroom).

The threshold issue on appeal is whether Gillenwater was denied the right to testify, and whether such denial constitutes reversible error. We address that issue first and then turn to the waiver and harmless error issues.

## II.

We review *de novo* a defendant's claim that he was deprived of his constitutional right to testify. *United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999); *see United States v. Moreno*, 102 F.3d 994, 998 (9th Cir. 1996). We review for abuse of discretion the district court's determination that Gillenwater waived his right to testify as a result of his disruptive conduct. *See Illinois v. Allen*, 397 U.S. 337, 347 (1970) (presence at trial); *United States v. Ives*, 504 F.2d 935, 941–42 (9th Cir. 1974) (right to testify at trial), *vacated*, 421 U.S. 944 (1975), *reinstated in relevant part*, 547 F.2d 1100 (9th Cir. 1976). Although a district judge has discretion to manage her courtroom, we look carefully at the denial of the right to testify because its loss is significant. *See United States v. Hinkson*, 585 F.3d 1247, 1260–63 (9th Cir. 2009) (en banc) (defining our "abuse of discretion" standard and noting that when we review the application of law to facts, we review "questions that implicate constitutional rights" with less deference to the district court). The district court abuses its discretion when it commits legal error. *Id.* at 1261–62; *see also United States v. Anekwu*, 695 F.3d 967, 978 (9th Cir. 2012); *United States v. Aguilar-Ayala*, 120 F.3d 176, 178–79 (9th Cir. 1997).

## A.

Congress has explicitly provided a defendant a statutory right to testify at a pretrial competency hearing. Title 18, Chapter 313 of the United States Code sets forth procedures for determining whether a criminal defendant is competent to stand trial. On its own motion, or on a motion by the defendant or the prosecutor, a court may order "a hearing to determine the mental competency of the defendant . . . if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).[2]  When the court orders a pretrial

---

[2] As the district court did here, the court may order a pre-hearing psychiatric or psychological examination of the defendant. 18 U.S.C. § 4241(b). "For the purposes of an examination pursuant to an order under section 4241 . . . the court may commit the person to be examined for a reasonable period, but not to exceed thirty days . . . to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court. The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241 . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant." *Id*. § 4247(b). The statutory scheme further provides that the examiner's psychological report "shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government, and shall include– (1) the person's history and present symptoms; (2) a description of the psychiatric, psychological, and medical tests that were employed and their results; (3) the examiner's findings; and (4) the examiner's opinions as to diagnosis, prognosis, and– (A) if the examination is ordered under section 4241, whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the

competency hearing, "the person whose mental condition is the subject of the hearing shall be represented by counsel[,] . . . *shall be afforded an opportunity to testify*, to present evidence, to subpoena witnesses . . . , and to confront and cross-examine witnesses . . . ."  *Id*. § 4247(d) (emphasis added).  Thus, Congress recognized that such procedural safeguards were, at a minimum, desirable, if not constitutionally mandated.[3]

Although we have held that a defendant has a constitutional right to be present at a competency hearing, *see Sturgis v. Goldsmith*, 796 F.2d 1103, 1108–09 (9th Cir. 1986), we have not addressed whether a defendant's right to testify at his pretrial competency hearing is of a constitutional magnitude.  We hold that it is.[4]

---

proceedings against him or to assist properly in his defense."  *Id*. § 4247(c).

[3] The legislative history reveals that the relevant committees in both houses of Congress included these provisions to comport with due process.  *See* S. COMM. ON THE JUDICIARY, S. REP. No. 98-225, at 236 (1983) (referring to the language that was ultimately enacted and noting that "section 4247(d) . . . requires that the hearing fully comport with the requirements of due process" and that "the protections afforded by the subsection for the hearing [include] the right to counsel (court appointed if the defendant is indigent), the right to testify and to present evidence, the opportunity to confront and cross-examine witnesses as well as the right to present witnesses in his own behalf"); H. COMM. ON THE JUDICIARY, H.R. REP. No. 98-577, at 21 (1983) (referring to the House's version of what became § 4247 and noting that "[t]he issue of the defendant's competence is resolved by the court following an adversarial hearing at which the defendant enjoys full due process rights").

[4] To our knowledge, no federal court has addressed this issue.

We are guided by the Supreme Court's precedent regarding a defendant's right to testify in a criminal trial.[5] "[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.'" *Id.* at 51 (quoting *Faretta v. California*, 422 U.S. 806, 819, n.15 (1975)). "The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony . . . ." *Id*. (citing *In re Oliver*, 333 U.S. 257, 273 (1948), and *Ferguson v. Georgia*, 365 U.S. 570, 602 (1961) (Clark, J., concurring) (noting that

---

[5] We recognize that a competency hearing has a more narrow focus than a criminal trial. At a competency hearing, the district court is not determining the defendant's guilt or innocence but merely whether the government may subject him to a trial. The courts' concern with competency stems from the principle that society should not subject someone to the rigors of trial who is so incapacitated that he cannot understand the proceedings against him or fight for his own liberty. *See Drope v. Missouri*, 420 U.S. 162, 171 (1975). Although this concern may give such proceedings the veneer of being protective in nature, they are nonetheless a step along the path to a criminal trial. *See United States v. Guerrero*, 693 F.3d 990, 1001 (9th Cir. 2012) (holding that a hearing pursuant to § 4247(d) is an "adversarial competency hearing [that] better resembles a criminal trial or a preliminary hearing" because "competency hearings may determine the critical question of whether a criminal defendant will proceed to trial"). Indeed, as we have previously noted, such a proceeding is a "critical stage" in the adversarial process. *Sturgis v. Goldsmith*, 796 F.2d 1103, 1109 (9th Cir. 1986) ("The competency hearing was a critical stage of Sturgis's trial. *Cf. Estelle v. Smith*, 451 U.S. [454], 467 [(1981)] (pretrial competency examination, which occurs prior to the in-court, competency hearing, was an adversarial stage).").

the Fourteenth Amendment secures the "right of a criminal defendant to choose between silence and testifying in his own behalf")).

"The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call 'witnesses in his favor'. . . ." *Id*. at 52. "Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense' is a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense in many criminal cases is the defendant himself." *Id*. (citation omitted) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). "The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony. In *Harris v. New York*, 401 U.S. 222 (1971), the Court stated: 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so.'" *Rock*, 483 U.S. at 52–53.

After discussing the right to testify in relation to the Fourteenth Amendment, the Court in *Rock* noted that "[t]his right reaches beyond the criminal trial: the procedural due process constitutionally required in some extrajudicial proceedings includes the right of the affected person to testify. *See, e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 786 (1973) (probation revocation); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (parole revocation); *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) (termination of welfare benefits)." *Rock*, 483 U.S. at 51 n.9. That a person has a constitutional right to testify before his or her welfare benefits are terminated strongly supports the conclusion that a defendant has an equivalent right to testify on his own behalf before he is determined to be incompetent and is deprived of his liberty.

As noted, we have held that another right granted in § 4247(d) is of a constitutional magnitude. In *Sturgis v. Goldsmith*, we held that a defendant had a constitutional right to be present at his pretrial competency hearing. 796 F.2d at 1108 ("Sturgis argues that the trial court's determination of his competency at a hearing held in his absence violated this constitutional right. We agree."). We reasoned that "[a] competency hearing is intricately linked to the fullness of a defendant's ability to defend against the charge . . . . Recognizing the constitutional dimensions of the competency hearing is not a novel undertaking." *Id*. We further explained:

> Th[e] interests in due process and fairness are fundamental to our adversary system. The adversarial nature of the system does not simply spring out full blown at trial. It commences earlier. For example, the Supreme Court has held that the Fifth Amendment's protection against compelled self-incrimination . . . applies to pretrial competency examinations . . . . "During the psychiatric evaluation, respondent assuredly was 'faced with a phase of the adversary system'. . . ." *Estelle v. Smith*, 451 U.S. 454, 467 [(1981)] (quotations and brackets in original) (quoting *Miranda v. Arizona*, 384 U.S. [436,] 469 [(1966)]). Thus, the interests underlying the right to be present at trial apply to the right to be present at a pretrial competency hearing . . . .

*Sturgis*, 796 F.2d at 1109.

The reasoning that we applied to recognize a defendant's constitutional right to be present at a pretrial competency hearing is equally applicable to a defendant's constitutional right to testify at one. Indeed, we have said that a defendant's right to testify is "fundamental to our judicial process." *Ives*, 504 F.2d at 941; *see Riggins v. Nevada*, 504 U.S. 127, 144 (1992) (Kennedy, J., concurring in the judgment) (noting that "[i]t is well established that the defendant has the right to testify on his own behalf, a right we have found essential to our adversary system"). Such a fundamental right does not "simply spring out full blown at trial." *Sturgis*, 796 F.2d at 1109. Moreover, because "[t]he defendant's demeanor and behavior in the courtroom can often be as probative on the issue of his competence as the testimony of expert witnesses," *id.*, the right to testify logically extends to competency hearings. As we noted, the Supreme Court has emphasized that "the most important witness for the defense in many criminal cases is the defendant himself." *Rock*, 483 U.S. at 52; *see also Gill v. Ayers*, 342 F.3d 911 (9th Cir. 2003) (reversing the denial of habeas relief and holding that it violated due process to deny a defendant the opportunity to testify at his sentencing hearing). This, too, is true of competency hearings. We hold that a defendant has a constitutional right to testify at a pretrial competency hearing. We note, however, that nothing in our decision prevents the district court from exercising discretion to limit testimony, focus the scope of the proceeding, or exclude irrelevant testimony. *Cf. Herring v. New York*, 422 U.S. 853 (1975) (recognizing a defendant's constitutional right to make a closing argument, and noting that such recognition "is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained," *id.* at 862).

## B.

Because a defendant's right to testify "is personal, it may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (citing *United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990), and *United States v. Martinez*, 883 F.2d 750, 756 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir.), *cert denied*, 501 U.S. 1249 (1991)); *see also Pino-Noriega*, 189 F.3d at 1094. "[T]he ultimate decision whether to testify rests with the defendant." *Joelson*, 7 F.3d at 177 (citing *Edwards*, 897 F.2d at 446–47).

We recognize that the nature of a competency hearing complicates this delineation of rights. Where a defendant's competency is at issue, defense counsel will play an important role in ensuring that a defendant understands his right to testify, that it can be waived, and the consequences of either decision. Not infrequently, defense counsel may encounter a defendant who wishes to testify despite counsel's honest contrary recommendation. Nonetheless, the Constitution and our case law compel us to conclude that the ultimate decision is for the defendant to make.[6]

---

[6] *See Rock*, 483 U.S. 44, 53 n.10; *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (stating that a defendant has the "ultimate authority to make certain fundamental decisions regarding the case, as to whether to . . . testify in his or her own behalf"); *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring) ("Only such basic decisions as whether to . . . testify in one's own behalf are ultimately for the accused to make."); *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc) ("We now reaffirm that a criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court

Here, Gillenwater's counsel acknowledged during the hearing that Gillenwater wished to testify, but stated that it was counsel's recommendation that Gillenwater not do so. During the hearing, Gillenwater also clearly demonstrated that he wished to testify despite his counsel's advice. Because it was not within counsel's authority to waive Gillenwater's right to testify over Gillenwater's clear objection, we must analyze whether Gillenwater himself waived his right to testify. The government argues that he did, and that even if there was no waiver the court's error was harmless. We disagree on both counts.

## C.

### 1.

Despite the general presumption against waiver of constitutional rights,[7] and the requirement that such waiver be "knowing and intentional," *Joelson*, 7 F.3d at 177, a defendant may waive his right to testify through his silence or disruptive behavior. In *Joelson* and *Edwards* we held that waiver of the right to testify can sometimes be inferred by a

---

or by defense counsel."); *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir. 1987); *United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir. 1984); *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 118-19 (3d Cir. 1977).

[7] "[T]he Court has consistently taken the position that a waiver of a constitutional right or privilege will be measured against a higher standard than a waiver of a right or privilege not guaranteed by the Constitution." *Ives*, 504 F.2d at 940 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("It has been pointed out that courts indulge every reasonable presumption against waiver of fundamental constitutional rights and that we do not presume acquiescence in the loss of fundamental rights." (footnote and internal quotation marks omitted))).

defendant's silence. *Joelson*, 7 F.3d at 177 ("[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so."); *Edwards*, 897 F.2d at 446–47 (holding that defendant waived his right to testify where "[n]either the prosecution nor the court was given any reason to think the defendant desired to testify"). In other words, we can infer that a defendant has personally waived his right to testify when defense counsel elects not to call the defendant as a witness, and despite being present, the defendant takes no affirmative action to demonstrate his disagreement with his counsel's decision not to call him as a witness. *Pino-Noriega*, 189 F.3d at 1095; *Joelson*, 7 F.3d at 177; *Edwards*, 897 F.2d at 446–47.

Here, however, Gillenwater clearly indicated during the hearing that he wished to testify. When asked if he had any evidence to present, Gillenwater's counsel told the court: "My client has indicated to me that he wishes to testify at this hearing." The record reflects that Gillenwater then interjected: "Yes." There could be no clearer indication that Gillenwater wished to testify and that the court was apprised of his desire to do so.[8] Thus, it is abundantly clear that

---

[8] Unlike Gillenwater, some defendants will waive their right to testify at their competency hearings. If the district court ultimately concludes that a defendant is not competent to stand trial, this may cast doubt on the validity of the defendant's earlier waiver. *Cf. United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (holding that the defendant's relinquishment of the right to testify *at trial* "must be knowing and intentional"). That concern does not arise here because Gillenwater did not waive his right to testify. We note, however, that different forms of competence may be required to validly waive rights at different stages of a criminal proceeding. *See, e.g.*, *Indiana v. Edwards*, 554 U.S. 164, 178 (2008) (holding that the Constitution permits states to insist upon

Gillenwater did not waive his right to testify through silent acquiescence to his counsel's decision. Rather, we must analyze whether Gillenwater otherwise waived his right to testify through his disruptive behavior.

Prior to *Arkansas v. Rock*, we set forth the test for waiver of a defendant's right to testify as a result of his disruptive conduct. *See Ives*, 504 F.2d at 942.[9] We principally relied on *Illinois v. Allen*, 397 U.S. 337 (1970), which defined the scope of a defendant's constitutional right to be present at trial. *Allen* held that a judge has the power to remove a disruptive defendant from the courtroom when the defendant "insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." 397 U.S. at 343. Thus, "a defendant may, by his conduct, waive his right to be present in the courtroom." *Ives*, 504 F.3d at 941. We held that "[w]hat the Court said in *Illinois v. Allen* about disruptive defendants is equally applicable to those who wish to testify:

---

representation by counsel for those competent enough to stand trial but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves).

[9] In *Ives*, we assumed without deciding that a defendant had a constitutional right to testify at trial. *Id*. at 940, 941. The Supreme Court in *Rock* validated that assumption and held that a defendant has a constitutional right to testify at trial. 483 U.S. 44. Therefore, the relevant analysis in *Ives* is still good law.

'. . . We believe that trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.'" *Id.* (quoting 397 U.S. at 343).[10]

Yet that discretion is limited. A defendant's right to testify, which we have said is "fundamental to our judicial process . . . cannot be lost unless it is clearly necessary to assure the orderly conduct of the trial." *Ives*, 504 F.2d at 941–42. These same principles apply at this stage of the proceeding. *See Sturgis*, 796 F.2d at 1109. Here, the district court erred in preventing Gillenwater from testifying because the court did not adequately warn Gillenwater that his disruptive conduct would lead to his removal from the courtroom and the denial of his right to testify.

**2.**

Although the court has no general affirmative duty to inform a defendant of his right to testify, *Pino-Noriega*, 189 F.3d at 1094–95, the court *does* have a duty to warn a defendant of the consequences of his disruptive behavior before the court removes the defendant from the courtroom,

---

[10] In its post-hearing order, the district court relied on Federal Rule of Criminal Procedure 43(c)(1)(C) for its authority to remove Gillenwater from the courtroom because he was disruptive. This Rule was amended in 1974 to reflect *Allen*. There is no corresponding rule setting forth the standard for when a court may, in effect, prevent a defendant from testifying. Moreover, as the Advisory Committee Notes state: "The decision in *Allen*[] makes no attempt to spell out standards to guide a judge in selecting the appropriate method to ensure decorum in the courtroom and there is no attempt to do so in the revision of the rule." Thus, we rely principally on our precedent.

*Allen*, 397 U.S. at 343, and before the court deprives the defendant his right to testify, *Ives*, 504 F.2d at 942.

In *Allen* the Court "explicitly h[e]ld . . . that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."   397 U.S. 343.   In his concurrence, Justice Brennan further underscored the obligation on the court to warn the defendant before removing him.   *Allen*, 397 U.S. at 350 (Brennan, J., concurring) ("Of course, no action against an unruly defendant is permissible except after he has been fully and fairly informed that his conduct is wrong and intolerable, and warned of the possible consequences of continued misbehavior."); *see also Gray v. Moore*, 520 F.3d 616 (6th Cir. 2008) (granting habeas relief because the trial court, without warning the defendant of the consequences of his behavior, removed the defendant from the courtroom, without objection, after his outburst accusing a witness of lying).

In *Ives* we held, "as did the Court in *Illinois v. Allen*, that the defendant must be warned of the consequences of his actions before a court can determine that he has waived his privilege to testify."   504 F.2d at 942.[11]

---

[11] The duty to warn a defendant that he will forgo the right to be present and to testify if he persists in disruptive conduct is consistent with the Supreme Court's statement in *Allen* that "[o]nce lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings."  397 U.S. at 343.  It is only logical that where such fundamental rights can vacillate in and out of

Here, the district court never advised Gillenwater that his outburst would lead to the loss of his right to testify. Nor is it clear that Gillenwater understood that he had such a right. Even construing the transcript in a light deferential to the district court, Gillenwater was not clearly advised that his outburst would deprive him of his right to be present in the courtroom. The relevant portion of the hearing transcript reflects the following exchange between the court and Gillenwater:

> THE COURT: Mr. Gillenwater, that's enough.
>
> THE DEFENDANT: Then get me the fuck out of here.
>
> THE COURT: Fine.
>
> THE DEFENDANT: The exculpatory evidence clears me.
>
> THE COURT: Then you can go out.
>
> THE DEFENDANT: The exculpatory evidence clears me of this fucking diagnosis.
>
> THE COURT: That's enough.
>
> THE DEFENDANT: You're not going to be a jury – a judge – you're not going to be a judge much longer.

existence based on a defendant's conduct, the court has an obligation to inform the defendant how his actions may waive or restore those rights.

THE COURT: That's enough.

THE DEFENDANT: I'll wait – I'll wait for the Republicans to come back. The exculpatory evidence clears me of that diagnosis and these charges. You will not be a judge much longer. I'll wait for Republicans.

(The marshals escorted Mr. Gillenwater from the courtroom.)

At most, Gillenwater's statement "get me the fuck out of here" could refer to a desire to leave the courtroom voluntarily. *See* Fed. R. Crim. P. 43(c)(1)(A). Nonetheless, Gillenwater never expressed any desire to waive his right to testify. His outburst occurred in response to his attorney's statements to the court that his attorney did not believe it was in his best interest to testify. And the court justified Gillenwater's removal on the basis of Rule 43(c)(1)(C), which requires that "the court warn[] the defendant that it will remove" him. Aside from the court's repeated statement "that's enough" and "[t]hen you can go out," the court did not expressly warn Gillenwater that if he did not stop his disruptive conduct he would lose his right to be present in the courtroom; and there was no warning that if he were removed from the courtroom, he would lose the right to testify.

Therefore, we conclude that the district court committed legal error and thereby abused its discretion in not informing Gillenwater that if he continued to be disruptive, he would be removed from the courtroom and would lose his right to testify. As a result of the error, we further conclude that

Gillenwater did not waive his right to testify as a consequence of his disruptive conduct.

### D.

Where a defendant is denied a constitutional right, on direct review we typically review to determine whether that error was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 24 (1967). *See Badger*, 587 F.2d at 977 (applying *Chapman* harmless error review where defendant was denied his right to be present at trial). The Supreme Court has distinguished these "trial" errors from "structural" errors, holding that trial errors are subject to *Chapman* harmless error analysis while structural errors warrant *per se* reversal. *Arizona v. Fulminante*, 499 U.S. 279, 306–12 (1991) (Rehnquist, C.J., writing for a five-Justice majority). In *Fulminante*, the Court said that trial errors are those that "may . . . be quantitatively assessed in the context of other evidence presented in order to determine whether [the error] was harmless beyond a reasonable doubt." *Id*. at 307–08. Structural error exists only where the trial "'cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" *Id*. at 310 (quoting *Rose v. Clark*, 478 U.S. 570, 577–78 (1986)).

On direct review, we have never held that harmless error analysis applies to the denial of a defendant's constitutional right to testify—in other words, we have never said whether the denial of the right to testify is structural or trial error.[12]

---

[12] In the habeas corpus context, however, we have applied harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). *See*, *e.g.*, *Parle v. Runnels*, 387 F.3d 1030, 1042–45 (9th Cir. 2004). We

Because we hold that the denial of Gillenwater's constitutional right to testify was not harmless, we need not decide whether the denial of that right constitutes structural error.

We acknowledge that our task is made more difficult because we do not know what testimony Gillenwater would have provided had he been permitted to take the stand. However, the record evidence, when considered against the two-part standard for determining whether a defendant is competent to stand trial, leads us to conclude that the error was not harmless.[13]

A defendant cannot be forced to stand trial unless he has both (1) "a rational as well as factual understanding of the proceedings against him" and (2) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see Indiana v. Edwards*, 554 U.S. 164, 169–70 (2008). Under 18 U.S.C. § 4241(d), "[i]f, after the [competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General."

---

express no view as to whether harmless error analysis applies on direct review to the denial of a defendant's constitutional right to testify.

[13] We note that the Supreme Court has said that an "appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." *Luce v. United States*, 469 U.S. 38, 42 (1984).

Here, in finding that Gillenwater was incompetent to stand trial under § 4241(d), the district court considered a single incomplete psychological report, the testimony of the psychologist who prepared the report, and Gillenwater's conduct in the courtroom. Although there is ample evidence that Gillenwater may be delusional at times, we nonetheless cannot find that the denial of his constitutional right to testify was harmless beyond a reasonable doubt. *Chapman*, 386 U.S. at 24.

To recall, Dr. Low's report concluded that Gillenwater demonstrated "a poor ability to properly assist counsel in his defense" and noted that "[i]t appears as though the topic [Gillenwater] has focused on with his attorney is the government conspiracy." The report reiterated that Gillenwater's delusional disorder "could substantially impair his ability to assist counsel in his defense. It is strongly recommended that formal competency restoration be pursued at a Federal Medical Facility."

In her testimony, Dr. Low repeated the same findings. She stated that "it appears as though Mr. Gillenwater is solely focused on this supposed conspiracy. He does not appear to be concerned at all with his actual charges, but it seems as though he wants to bring this conspiracy to light . . . . [H]e wanted to be arrested so that he could take this conspiracy issue to trial." Gillenwater's counsel did not present any evidence to counter the findings of Dr. Low. Additionally, the court was able to observe Gillenwater's behavior in the courtroom. Gillenwater called his attorney a criminal, cursed at the court, and whispered audibly throughout much of the hearing.

Yet Gillenwater's testimony and behavior when testifying may have underscored other positive findings in Dr. Low's report.  Dr. Low noted that "Gillenwater possessed a good understanding of the purpose of the evaluation" she was conducting.  Although Dr. Low indicated that Gillenwater's hesitancy to be interviewed evidenced paranoia, Gillenwater placed a number of conditions on his interviews for the logical reason that he was appealing whether he should be evaluated at all.

The report further notes that Gillenwater's counsel, Cikutovich, reported that Gillenwater "is very intelligent," and that he had no criminal history.  Gillenwater also apparently openly reported to authorities at Dr. Low's facility about his mental health history.  Dr. Low found that Gillenwater was "pleasant, polite and cooperative," that he was "quite articulate," and that he had no difficulty in "attention, concentration, or short-term memory.  Mr. Gillenwater appeared to be oriented to person, place, and date.  His thought processes were clear and coherent." Although he was unlikely to take medications related to the delusion disorder, Gillenwater had "already consented to take mood stabilizers which should assist in maintaining a stable mood."

Dr. Low's "opinion on the issue of competency to stand trial" also included further indications that Gillenwater may have been competent to stand trial. Referring to "the criminal charges and related court proceedings," she noted that Gillenwater "certainly appears intelligent enough to be able to understand these types of factual information.  Mr. Gillenwater demonstrates an average understanding of the court participants and the related procedures.  His casual discussion about his case indicates he has a good

understanding of the different attorneys' roles, as well as the judge's role."

Additionally, Gillenwater could have testified, as he no doubt intended, to some of the facts that underlie his perception of a conspiracy against him. The record reveals no dispute that Gillenwater worked in construction on a casino in Las Vegas, that he may have observed OSHA violations there, and that he subsequently became a whistleblower. Cikutovich verified that Gillenwater "was a whistleblower for a Las Vegas casino, Caesar's Palace, that was removing asbestos illegally." Indeed, Dr. Low testified that if she had been presented with evidence that such a conspiracy against Gillenwater does exist, this would have changed her diagnosis in this case.

Moreover, if Gillenwater had been permitted to testify, as was his right, his courtroom demeanor may have revealed him to be an intelligent and articulate person. As we noted, "[t]he defendant's demeanor and behavior in the courtroom can often be as probative on the issue of his competence as the testimony of expert witnesses." *Sturgis*, 796 F.2d at 1109.

In sum, we cannot say that the error here was harmless beyond a reasonable doubt.

## III.

Because the district court violated Gillenwater's constitutional right to testify at his pretrial competency hearing, we vacate the district court's finding that Gillenwater is incompetent to stand trial and remand for a new competency hearing.

Gillenwater's counsel expressed concern that Gillenwater's testimony at his competency hearing may later be used against him by the government—a concern we take seriously. "Our court has supervisory authority 'to mandate procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution.'" *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012) (quoting *Thomas v. Arn*, 474 U.S. 140, 146–47 (1985)). We exercise that authority here. We remand with instruction that if another competency hearing is held at which Gillenwater testifies, the district court enter an order barring the use of such testimony at Gillenwater's trial except, if otherwise permissible, to impeach Gillenwater were he to testify at trial[14]—as is the rule in the context of a defendant's testimony at a suppression hearing. *See United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1291 (9th Cir. 1994) (holding that consistent with the Fourth and Fifth Amendments, a defendant's testimony at a suppression hearing could be used at trial only to impeach the defendant and not to prove his guilt).

**VACATED AND REMANDED.**

---

[14] We express no view as to whether such an instruction is required by either the Constitution or statute. However, we are of the view, pursuant to our supervisory power, that such an order should be entered in any case where a criminal defendant wishes to testify at his competency hearing, in order that such right to testify shall not have a negative consequence in any subsequent trial where he does not testify or a negative consequence, other than impeachment, in a subsequent trial where he does testify.