# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3084

_____

United States of America,      *
    *
      Appellee,     *
    *   Appeal from the United States
v.     *   District Court for the
    *   Western District of Arkansas.
Robert Jackson Salter,     *
    *
      Appellant.     *
    *
    *

_____

Submitted:   January 13, 2004

Filed:   February 27, 2004

_____

Before BYE, LAY, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

R.J. Salter entered a conditional plea of guilty to violations of 18 U.S.C. §§ 922(o)(1) and 924(a)(2), possession of a machine gun and now appeals the district

court's[1] denial of his motion to suppress evidence.  He was sentenced to 51 months imprisonment and three years supervised release.  His appeal is timely.

I

On September 13, 2002, law enforcement officers from the Polk County, Arkansas, Sheriff's Office and Arkansas State Police responded to a 911 emergency call reporting a shooting at the rural Salter residence.  The caller reported both father, R.L., and son, appellant R.J. Salter, were involved in a shooting at the residence, and one of them had been shot in the head.

When officers arrived at the residence, constructed of 14-inch thick concrete walls and oblong gun turrets, they observed R.L. outside the residence.  He was initially handcuffed, as the officers did not know whether he was the shooter or the victim, but later released from restraints upon observing he had sustained a head wound and identified him as the victim of the reported shooting.

Officers responded to yells from inside the house.  Upon entering, they observed pistols lying along a counter and discovered R.J. in an 8-foot by 8-foot "gun room," containing a large gun safe with guns leaning against the walls of the room, as well as other objects.  R.J. pointed an AK-47 rifle and an AR-15 type rifle at several officers, who slammed a door on him and took cover.

A standoff between R.J. and officers ensued, lasting in excess of five hours, after which he surrendered.  During the standoff, R.L. was allowed inside the residence in an effort to negotiate his son's surrender.

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, adopting the report and recommendations of the Honorable Beverly Stites Jones, United States Magistrate Judge for the Western District of Arkansas.

After the standoff began, State Trooper Mickey Simmons positioned himself in front of the gun room entry door in an effort to convince R.J. to surrender. R.J. pointed an AK-47 at Trooper Simmons's head and made a threatening comment. Officers, including Officer Ronnie Richardson, who throughout the standoff stated they could see inside the gun room and observed, either directly or via a reflection in a painted safe, numerous other weapons, including an AK-47 and several AR-15 or M-16 rifles.

During the standoff, Officer Richardson observed R.J. and R.L. using military-type hand signals and believed they were communicating with each other. R.J. called his father a coward and tried to convince him to join in the standoff. Officer Richardson, who has a military background, also believed he saw explosives inside the gun room, including C-4 (a military high-explosive) and pipe bombs. He stated the objects appeared similar to blocks of C-4 he had seen in the past. Officer Richardson's belief was buttressed by R.L.'s alarmed reaction to R.J.'s actions. Reportedly each time R.J. struck one of these objects on the floor R.L. stated "we all didn't need to die there" and told his son to calm "way down."

Prior to R.J.'s surrender, Officer Richardson had a conversation with R.L. in the bathroom during which R.L. admitted his son was acting the way he was because he had illegal weapons and was scared the officers would take everything. During this conversation, R.L. told Officer Richardson his son had enough ammonium nitrate to level the entire house.

After the standoff ended, police immediately took R.J. into custody and read R.L. his rights, who thereafter invoked his right to remain silent. Minutes later, Arkansas State Police Captain Mike Fletcher approached R.L., with knowledge he had invoked his right to remain silent, but nevertheless continued questioning him regarding any explosives or other dangerous devices which might injure officers during a search of his residence. R.L. gave a brief statement regarding his views of

the government and described the types of explosives and firearms inside the residence. Officers informed the state court judge who issued the search warrant that R.L. had invoked his right to remain silent and that the statements taken by Captain Fletcher were obtained subsequent to this invocation. Fletcher recited a summary of R.L.'s statements to the judge who issued the search warrant.

The officers prepared a 29-page affidavit in support of their application for a search warrant. When Officer Richardson provided his affidavit, he was tired and had only slept a few hours. On September 14, 2002, the state-court judge issued a search warrant, which included authorization to search for evidence of violations of state and federal law, including the rifles used by R.J. to fire at R.L., fully automatic firearms, converters to render semi-automatic weapons fully automatic, and explosives and explosive devices.

A search revealed physical evidence associated with the shooting incident and the assault on police officers, as well as numerous illegal weapons, including M-16 machine guns. Officers also found explosives, although none of the explosives were inherently illegal to possess.

On September 25, 2002, an indictment was returned charging R.J. with (1) knowingly possessing a machine gun, namely an H & K Model 94, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2); (2) knowingly receiving and possessing a firearm, namely, an AK-47 style rifle not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5871, and 5861(d); and (3) knowingly possessing a firearm, namely, a SGW .223 lower receiver, which had the serial number obliterated, in violation of 26 U.S.C. §§ 5841, 5842, 5871 and 5861(h).

On November 8, 2002, co-defendant R.L. filed a motion to suppress evidence, in which R.J. joined. R.L. also filed a motion to suppress statements attributed to

him.  United States Magistrate Judge Beverly Stites Jones held a suppression hearing and issued a Report and Recommendation denying the motion to suppress evidence, but granting the motion to suppress R.L.'s statements.  The district court adopted the Report and Recommendation denying the motion to suppress evidence and granting the motion to suppress R.L.'s statements.

R.J. entered a conditional plea of guilty to Count 1 of the indictment, reserving the right to appeal the denial of his motion to suppress evidence.  The court sentenced R.J. to 51 months imprisonment and three years supervised release.  This appeal followed.

II

This court reviews the district court's conclusions of law regarding a motion to suppress *de novo*, and reviews the district court's factual findings for clear error, giving due weight to the inferences of the district court and law enforcement officials.  United States v. Walker, 324 F.3d 1032, 1036 (8th Cir. 2003); United States v. Booker, 269 F.3d 930, 931 (8th Cir. 2001).

R.J. contends it was error for the district court to deny his motion to suppress evidence and it was necessary to suppress evidence seized from the search warrant as it was based in part on illegally obtained statements made by co-defendant R.L.[2]

_____

[2]The government does not dispute that R.J. has the right to challenge the search warrant in its totality and the use of R.L.'s statements in support of the search warrant. A defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched.  See United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994).  We find R.J. had an expectation of privacy in the area searched, because it was his home.  Therefore, although the unconstitutional police action – the questioning subsequent to R.L.'s invocation of his right to remain silent – was directed at the father, rather than R.J. himself, R.J. has a right to challenge the underpinnings of the warrant.

The district court found Captain Fletcher obtained R.L.'s statements in violation of his Miranda rights because Captain Fletcher questioned R.L. shortly after he had exercised his right to remain silent. Therefore, the court suppressed those statements and determined they could not be used at trial. Nevertheless, the court concluded the search warrant was issued based only partially on tainted evidence and was also based on evidence arising from untainted independent sources. Thus, the court found the lawfully obtained information amounted to probable cause and would have justified issuance of the warrant apart from the tainted information.

Probable cause to search "exists when there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched." United States v. Murphy, 69 F.3d 237, 241 (8th Cir. 1995) (citations and internal quotations omitted). In issuing a warrant, the judge makes a "practical, common-sense decision" whether, considering all the circumstances, a reasonable person would have reason to suspect evidence would be discovered. United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). The search warrant should be viewed in its totality, as probable cause is established only if the "totality of the circumstances" indicate a probability of criminal activity. United States v. Fairchild, 189 F.3d 769, 775 (8th Cir. 1999).

We find the district court properly concluded the following untainted facts contained in the search warrant affidavit amount to probable cause to support the search warrant: (1) the officers' revelation of events concerning the shooting and standoff; (2) the officers' accounts of a bunker-style residence with gun turrets; (3) R.J.'s apparent handling of explosive devices with threats to use the explosives and R.L.'s fearful responses; (4) the Salters' communications through signals used by units in the military and law enforcement; (5) R.J.'s insistence that all firearms were semi-automatic and legal and the Salters' keen interest in keeping officers from observing the contents of the residence or taking anything from it; (6) prior complaints from

citizens to law enforcement officers of automatic gunfire and explosions on the property; (7) R.L.'s comments made in the bathroom to Officer Richardson about his son's desire to keep police from seizing weapons and the large amount of ammonium nitrate within the residence;[3] and (8) Officer Richardson's observance of several AR-15 or M-16 assault rifles in the gun room.

We find these factors amount to probable cause to support the search warrant, even without the tainted statements. These facts are more than ample to support a finding of probable cause to believe physical evidence of multiple state law violations was located on the premises – specifically, firearms used to shoot R.J.'s father as well as firearms used in the multiple assaults on police officers. There was also probable cause to search for automatic weapons, explosives, and gun parts used in the conversion of semi-automatic firearms to fully automatic.

R.J. further contends the search warrant was based on incorrect or recklessly drawn conclusions by exhausted officers resulting in misstatements or omissions which misled the issuing judge, including the Salters possessing illegal, military C-4 high explosives and pipe bombs. Thus, R.J. argues the district court should have suppressed all evidence obtained in the search. In support of this position, R.J. contends there was little or no factual basis to support Officer Richardson's conclusion R.J. was handling C-4 or there were homemade pipe bombs in the gun room. In furtherance of his argument, R.J. points to the fact no pipe bombs or C-4 explosives were discovered during the search.

Police cannot obtain valid search warrants where they knowingly or recklessly provide misinformation to a magistrate who issues a warrant, unless probable cause

---

[3]On appeal, R.J. does not challenge the district court's conclusion R.L. was not in custody when he made the statements to Officer Richardson in the bathroom and therefore there was no Miranda violation with respect to that conversation.

exists when the affidavit is properly reconstructed with truthful information. <u>United States v. Wells</u>, 223 F.3d 835, 839-40 (8th Cir. 2000). <u>See also</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978); <u>United States v. Carlson</u>, 697 F.2d 231, 238 (8th Cir. 1983) (finding a misstatement that was an unintentional mistake by the officer applying for a search warrant does not invalidate the warrant).

We find the facts and circumstances presented by the officers established a fair probability to believe illegal explosives could be found on the premises. Although Officer Richardson was apparently mistaken in his belief, there is nothing to indicate his assertions were made with reckless disregard for the truth. There has been no credible showing by R.J. that the officers knowingly or recklessly presented false statements to the issuing judge. Even if the officers were negligent in their representations in the affidavit for the search warrant, the exclusionary rule does not apply to negligent misrepresentations or omissions. <u>United States v. Reinholz</u>, 245 F.3d 765, 775 (8th Cir. 2001).

Finally, because we have found the search warrant was properly issued, we need not consider R.J.'s arguments about the good faith exception to the exclusionary rule not applying in this case.

For these reasons, we affirm the district court's denial of the motion to suppress evidence.

_____