# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-2216

_____

United States of America

*Plaintiff - Appellee*

v.

Malcolm Roy Evans

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: May 16, 2018
Filed: November 6, 2018

_____

Before BENTON, KELLY, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

A jury found Malcolm Roy Evans guilty of four offenses arising out of a bank robbery. We affirm his convictions and sentence.

## I.

A man armed with a sawed-off shotgun robbed a Wells Fargo branch in Moorhead, Minnesota, and absconded with approximately $10,000. As he left the bank, he jumped into the back of a van that he found parked near the bank's front entrance. The driver escaped and took her keys with her. The robber then fled on foot. Soon thereafter, he carjacked someone else, who drove him at gunpoint to the West Acres Mall in Fargo, North Dakota, right across the border from Moorhead. Once there, the robber forced the driver out of the car and sped off. The police found the car a short distance from the mall.

Using security footage, the police identified Evans as the perpetrator. The day after the robbery, they arrested him in Fargo as he left a Motel 6, where he was renting two rooms. The police then obtained a warrant to search the rooms and found over $2,000 in cash, a sawed-off shotgun, and items of clothing matching those the bank robber had worn.

The United States charged Evans with armed bank robbery, attempted carjacking, carjacking, forcing a person to accompany him while attempting to avoid apprehension, and kidnapping. 18 U.S.C. §§ 1201(e), 2113(a), (d)–(e), 2119(1). The kidnapping charge was dismissed before trial. A jury found him guilty of the remaining four counts, and the district court[1] sentenced him to 360 months in prison. Evans raises five arguments on appeal, which we address in the order they arose.

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

II.

Evans, in the first of his five arguments, challenges the sufficiency of the affidavit underlying the search warrant, which he believes lacked probable cause. The district court denied Evans's motion to suppress the evidence found in the search of his motel rooms. "In reviewing the denial of [a] motion to suppress, we review the district court's . . . legal conclusions *de novo*." *United States v. Ahumada*, 858 F.3d 1138, 1139 (8th Cir. 2017). "Probable cause exists[] if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (per curiam) (internal quotation marks and citation omitted).

Evans argues that an affidavit from a detective who investigated the bank robbery, which the police submitted as part of the search-warrant application, did not adequately connect him to the crime. See *United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004). In his view, the bank security footage relied upon by the detective in investigating the robbery was insufficient to establish probable cause, and the other evidence was too inconclusive to establish his identity as the bank robber. We disagree.

The affidavit contained a lot more than just conjecture about the identity of the bank robber. It explained how the detective conducted the investigation, including his examination of video footage from a local bus, which depicted a man whose appearance was "consistent with" the bank robber. He then tracked the man's movements and discovered that the timelines of the bus passenger and the bank robber matched. The bus passenger arrived at the bank shortly before the robbery, and the same man later boarded a bus where the robber had abandoned the carjacking victim. At least three people who knew Evans identified him from the bus footage. Two of those people also said Evans owned a sawed-off shotgun, which was the

-3-

weapon used to commit the crimes. Because the affidavit showed that Evans had the means and opportunity to commit the crimes, it established a fair probability that he was the bank robber.

Evans also argues that even if there was reason to suspect he was the robber, the affidavit did not establish that the police would find evidence in his motel rooms. *See United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). His argument is unpersuasive. The bus footage showed a man identified as Evans, who had a backpack, taking the bus from the West Acres Mall to a stop near the Motel 6. Evans then boarded another bus a short time later, this time without the backpack. The police knew Evans had two rooms at the Motel 6, so they could reasonably infer that Evans went from the scene of the crime to the motel to hide his shotgun and the stolen money. The police arrested Evans the next day as he was leaving the motel, suggesting that both the weapon and the loot might still be inside. The affidavit therefore established a "fair probability" that the police would find evidence from the bank robbery in one or both of his motel rooms. *Id.* at 549.

III.

Evans's second challenge focuses on the numerous letters he sent to the district court, which he now characterizes as requests for new counsel. He says the district court should have granted him a new attorney, even though he never actually asked for one.

Although their content varied, Evans's letters primarily complained about his attorney's failure to share evidence with him. Some letters also focused on his attorney's decision not to pursue certain defense theories. At one point, he asked the court to direct his legal team to "get on the ball." The district court did not directly respond to any of Evans's letters.

-4-

At a pretrial hearing, however, the court inquired about the letters. Evans responded:

> I've been wanting to do a speedy trial, but those issues are still those issues. I have still, in my opinion, not seen all of the evidence in my case. . . . I want to go on the record with that and let you all know that, and at the same time I will still proceed to trial on my case.

The court arranged for him to stay in the courtroom after the hearing and examine the government's exhibit book. But the court took no further action, and the case proceeded to trial.

On appeal, Evans argues that the district court should have treated his letters as something they were not: motions for new counsel. He says the court should have read between the lines and granted him relief, even though he did not use magic words indicating that he wanted a new attorney.

Because Evans never actually requested a new attorney or objected to the court's failure to give him one, we review only for plain error. *See United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc); Fed. R. Crim. P. 52. The threshold requirement for relief under the plain-error standard is the presence of an error and, under the circumstances of this case, there was none. *See United States v. White Bull*, 646 F.3d 1082, 1091 (8th Cir. 2011).

It is not clear from Evans's letters that he was requesting (or was entitled to) new counsel. Indeed, even when the court asked Evans about the letters, he did not request the appointment of new counsel. Instead, all he said was that his attorney should have shown him the evidence in his case—relief the court then granted him when it ordered the government to share its exhibit book. Under these circumstances, the district court did not err, much less plainly err, in treating Evans's letters as

complaints about his lack of access to the evidence rather than as motions for the appointment of new counsel.

## IV.

Evans's third challenge is to the in-court identification by the driver of the van he attempted to carjack. He suggests that her identification was so prejudicial and unreliable that it violated his due-process rights.

When the driver took the stand, the prosecutor played security footage of the suspect approaching her van. The driver then began gesturing toward the defense table, where Evans was sitting. The prosecutor asked whether she could identify the man who had tried to carjack her, and she pointed at Evans. Defense counsel did not object to the testimony at the time. Only midway through the next day of trial did defense counsel formally object and move for a mistrial. The court denied the motion but prohibited the government from using the driver's in-court identification in its closing argument.

On appeal, Evans renews his argument that the circumstances of the in-court identification violated his due-process rights. In his view, the playing of the video and the brief, panicked nature of the driver's encounter with the suspect made the driver's identification particularly unreliable and prejudicial. *See generally Neil v. Biggers*, 409 U.S. 188 (1972) (establishing the standard for due-process challenges to eyewitness identifications).

Before evaluating the substance of Evans's argument, we must decide which standard of review applies: plain-error or de-novo review. The parties disagree about whether defense counsel's objection the following day was timely. *See Pirani*, 406 F.3d at 549 ("An error by the trial court, even one affecting a constitutional right, is forfeited . . . 'by the failure to make *timely* assertion of the right.'" (emphasis added)

(quoting *United States v. Olano*, 507 U.S. 725, 731 (1993))). We conclude that it was not.

An objection is timely only if it is made "at the earliest possible opportunity after the ground of objection be[comes] apparent." *United States v. Shores*, 700 F.3d 366, 370 (8th Cir. 2012) (citation omitted). Here, defense counsel's objection the next day came too late, long after the "earliest possible opportunity" had passed. *Cf. id.* at 370–71 (holding that an evidentiary objection made "just prior to closing arguments" was untimely). Defense counsel should have objected when the driver identified Evans, not the next day, to properly preserve the alleged error. Accordingly, plain-error review applies.

The standard of review is decisive. We recently explained that the law is unsettled on whether an in-court identification can violate due process without a showing of misconduct by the government. *See United States v. Shumpert*, 889 F.3d 488, 490–91 (8th Cir. 2018) (recognizing a circuit split on the issue in light of *Perry v. New Hampshire*, 565 U.S. 228 (2012)). Because Evans has not made a showing of government misconduct, "the error he alleges is not plain under current law." *Id.* at 491.

V.

Evans's fourth challenge centers on another witness acting unexpectedly—this time, himself. When Evans took the stand to testify in his own defense, he immediately started complaining about how he was being "railroaded," including by his own attorney. The district court cut him off and, after questioning him and determining that he would make similar remarks if placed on the stand again, ruled that he had forfeited his right to testify. Evans argues that these actions deprived him of his constitutional right to testify in his own defense. *See Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987).

-7-

A.

At trial, the defense called Evans as its sole witness. Once sworn, Evans did not wait for questions and immediately started cataloging his complaints with everyone involved in his case, including his own attorney and the court. Evans did not stop even after the court excused the jurors and instructed them to return to the jury room. We reproduce the exchange in full:

| The Defendant: | Ladies and gentlemen, I am being railroaded, by my attorney— |
| --- | --- |
| Defense Counsel: | Your Honor— |
| The Defendant: | —and by my defense investigator. |
| The Court: | Just a second. Mr. Evans? |
| The Defendant: | They have not shown me all the evidence in my case. I have written to this judge over eight documents telling her that I have not seen all the evidence in my case. |
| The Court: | Mr. Evans? |
| The Defendant: | The problem persists. I have written to the chief prosecutor, I have written to the chief judge, and I have written to the head lady over the public defenders, all making them aware that I have not seen all the evidence in my case. This is a violation of my constitutional rights. |

| | |
|---|---|
| The Court: | Members of the Jury— |
| The Defendant: | How can I prepare— |
| The Court: | —I'm going to ask that you proceed to the jury room. |
| The Defendant: | —my defense if they will not let me see the evidence in my case[?]  It's a violation of my rights.  This is wrong.  And this is the law?  This is a court of law?  Really. |

With the jury out of the courtroom, the court asked Evans, "have you now said what you wanted to say to the jury?"  "No, ma'am," he responded.  "There's so much stuff I would like to say, Your Honor."

After an hour-long recess, the court asked Evans to limit his responses to questions and follow the court's instructions.  Twice the court asked him whether he could "come and testify and respond to questions and answers" or whether he would "continue to tell the jury [his] complaints about the justice process and the people involved in it as [he had] so far."  Each time he said that he would do "both."

The court explained to Evans that he needed to respond only to the attorneys' questions so that it could "rule on objections and those sorts of things," and that if he would not comply, he could not testify.  But Evans insisted that he had to air his complaints during his testimony, regardless of the questions he was asked.  After the district court asked for the third time whether he would change his mind, he responded with another rant, this time claiming that the district court's inaction on his letters had "forced" him to express his concerns directly to the jury.  The court cut him off and found "that if Mr. Evans were allowed to continue his testimony, the

[c]ourt has no assurance that he would comply with the directives or the rules of evidence."

Evans was not done. When the jury returned, the court gave a brief curative instruction. As the jury was getting ready to leave the courtroom to deliberate, Evans yelled, "[t]hey're still railroading me. That's not right. It's not right." The court ordered Evans removed and then excused the jury for the day.

The next morning, defense counsel moved for a mistrial based on Evans's outbursts. The court denied the motion and explained that "[t]he so-called second incident . . . convinces me that the judgment that the testimony should be concluded at this point with regard to forfeiture of the defendant's right to testify further is appropriate." The trial concluded without Evans retaking the stand.

B.

Evans claims that the district court should have allowed him to retake the stand and that its decision not to do so violated his constitutional right to testify in his own defense. *See Rock*, 483 U.S. at 49–53. This right, though fundamental, "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process," *id.* at 55 (citation omitted), including well-established rules of evidence, *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). For example, criminal defendants do not have the right to say anything they would like from the stand, regardless of its relevance. *Cf. id.* at 326–27 (explaining that excluding testimony that is only "marginally relevant" would not violate a defendant's right to present a complete defense (citation omitted)); *Rock*, 483 U.S. at 55 (discussing "the right to present relevant testimony").

None of what Evans said during his brief time on the stand was relevant. Relevant evidence makes a "fact [that] is of consequence in determining the action"

-10-

"more or less probable than it would be without the evidence." Fed. R. Evid. 401. His negative feelings about his legal team and the criminal-justice system had nothing to do with any of the facts needed to convict him of robbery or carjacking.

Nevertheless, Evans claims that the district court should have done more to determine whether his complaints were relevant before taking away his right to testify. But he just kept repeating the same complaints that he had already described in detail in the letters he had sent to the court. So the court did not need to do anything more under the circumstances, such as hold a separate hearing or conduct a sidebar with the attorneys. It already knew what Evans was going to say and had enough information to evaluate whether it was relevant. Indeed, even now Evans has trouble explaining the relevance of his complaints.

It makes little difference on these facts that Evans expressed his willingness to answer questions alongside his unsolicited and inflammatory remarks about his attorney and the court. Witnesses—even criminal defendants at their own trials—cannot expect to testify if they announce an intention to follow the rules every now and then and openly flout them at other times. Evans had two options: he could follow the evidentiary rules and limit himself to relevant testimony, or he could elect not to testify at all. When he chose a third option—expressing his intention to continue to willfully ignore the rules despite the court's repeated warnings—he put himself at risk of losing his right to testify entirely. *See, e.g.*, *United States v. Nunez*, 877 F.2d 1475, 1478 (10th Cir. 1989) ("[T]he right to testify is not absolute and may be waived by contumacious conduct." (internal quotation marks and citations omitted)); *United States v. Ives*, 504 F.2d 935, 941–42 (9th Cir. 1974) (holding that a defendant may lose his right to testify due to disruptive conduct, because "such conduct cannot be allowed when the defendant takes center stage on the witness stand"), *vacated on other grounds*, 421 U.S. 944 (1975), *opinion reinstated in relevant part*, 547 F.2d 1100 (9th Cir 1976) (per curiam). *See generally Illinois v. Allen*, 397 U.S. 337, 343 (1970) ("We believe trial judges confronted with disruptive,

contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.").

Of course, not every violation of the evidentiary rules or the court's instructions, no matter how accidental or trivial, justifies depriving a criminal defendant of the right to testify. To the contrary, forfeiture of the right should be limited to only the most defiant of defendants, and then only after the court explains the consequences of continued defiance. *Cf. United States v. Hellems*, 866 F.3d 856, 864–65 (8th Cir. 2017) (recognizing that a trial court must first warn a defendant before it can remove him from the courtroom for disruptive behavior); *United States v. Gillenwater*, 717 F.3d 1070, 1081 (9th Cir. 2013) ("A defendant's right to testify . . . cannot be lost unless it is clearly necessary to assure the orderly conduct of the trial." (internal quotation marks and citation omitted)). But here, Evans persisted in his view that he had the right to make irrelevant and highly inflammatory comments, despite multiple warnings that continuing to do so would cost him his right to testify. Once it became clear that Evans did not intend to follow the rules if placed back on the stand, the court did not abuse its discretion in concluding that he had forfeited his right to testify. *Cf. Hellems*, 866 F.3d at 863–64 (reviewing the decision to remove an unruly defendant from the courtroom for an abuse of discretion).

VI.

Evans's fifth and final challenge is to the calculation of his advisory sentencing range, specifically the court's addition of a two-level enhancement for obstruction of justice. He says that nothing he did was part of an attempt to obstruct justice.

As the district court prepared to give its final instructions to the jury, Evans had yet another outburst. This time, he leapt onto the defense table with his arms above his head—a feat described by the government at oral argument as "amazing"—and

-12-

yelled, "[t]his is bullshit." Marshals immediately subdued, handcuffed, and removed him.

With Evans gone, the defense moved for a mistrial. This brought the total number of mistrial motions to four. The first was in response to the driver's in-court identification of Evans. The second occurred approximately an hour after Evans's attempt to testify. He argued then that his own behavior had irreparably prejudiced the jury. The third followed his second outburst—"[t]hey're still railroading me. That's not right. It's not right."—and relied on the same justification. The court denied the fourth motion, just as it had the previous three.

Those motions, along with Evans's misbehavior at trial, proved significant at his sentencing hearing. Over his objection, the district court found that Evans had attempted to cause a mistrial with his final outburst. It then imposed a two-level enhancement for "willfully . . . attempt[ing] to obstruct or impede[] the administration of justice with respect to the . . . prosecution . . . of the instant offense of conviction." U.S.S.G. § 3C1.1. With the obstruction-of-justice enhancement included in his offense level, Evans's Guidelines range rose to 360 months to life in prison. The court imposed a 360-month sentence.

Evans argues that the evidence did not support a finding that he had tried to cause a mistrial. To impose the enhancement, the court had to find by a preponderance of the evidence that his intent was to interfere with the prosecution of his case. *See United States v. Simms*, 285 F.3d 1098, 1101 (8th Cir. 2002). "We review a district court's factual findings underlying an obstruction of justice enhancement for clear error." *United States v. Nichols*, 416 F.3d 811, 821 (8th Cir. 2005).

In imposing the enhancement, the district court observed, "looking back at the record and the sequence of events, I'm convinced [Evans's final, table-jumping

-13-

outburst] was an attempt to ramp up efforts to declare a mistrial and start the case all over again." Defense counsel had already moved for a mistrial after both of Evans's previous outbursts, and his conduct had only gotten worse from there, even as the court had repeatedly warned him to behave. From this evidence, the court could have reasonably concluded that Evans's intent was to cause a mistrial and that he knew further disruptive behavior could lead to one. It was no great leap for the court to then conclude that Evans's final outburst—the most dramatic of all—was an effort to finally get one. Therefore, we hold that the court did not clearly err in imposing the obstruction-of-justice enhancement.

## VII.

Accordingly, we affirm the district court's judgment.

KELLY, Circuit Judge, concurring in part and dissenting in part.

The court concludes that the district court did not erroneously deny Evans the right to testify in his own defense because none of what Evans said during his brief time on the stand was relevant and there was no need to inquire further into Evans's planned testimony because the district court already knew what Evans was going to say. But "questions of relevance and prejudice are for the District Court to determine in the first instance," Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 387 (2008), and the district court did not rule Evans's planned testimony inadmissible for lack of relevance.

Rather, the district court found that "if Mr. Evans were allowed to continue his testimony, [it had] no assurance that he would comply with the directives or the rules of evidence," and concluded that Evans could not "respond to questions in a question-and-answer format." A trial court may surely limit a defendant's right to testify if he fails to abide by the "well-established rules of evidence [that] permit trial judges to

-14-

exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes, 547 U.S. at 326. But here I respectfully disagree that the district court's limited findings support the complete exclusion of Evans's testimony. See Rock, 483 U.S. at 55–56 ("[R]estrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve.").

When he took the stand, Evans expressed, in narrative form, his frustrations with the judicial process in general and his defense team in particular. The court calls these initial comments "irrelevant and highly inflammatory." In the context of a trial, and if untethered to a defense to the charges, that may well be true. But Evans had been trying to raise these issues with the court for several months. Evans wrote the district court numerous times, expressing his concern that he was not able to see the evidence against him and complaining that his counsel would not develop his defense because he would not plead guilty, that his counsel would not investigate evidence necessary to his defense, and that his defense team was aiding in his conviction. With this backdrop, a ruling on his right to testify could not be divorced from these previous, unsuccessful attempts to direct the district court's attention to the breakdown of the attorney-client relationship. Of course, counsel is not required to "docilely" pursue whatever factual or legal argument a client requests, regardless of its merit. Hunter v. Delo, 62 F.3d 271, 275 (8th Cir. 1995) (quoting United States v. Moore, 706 F.2d 538, 540 (5th Cir. 1983)). But "[w]hen a defendant raises a seemingly substantial complaint about counsel, the judge has an obligation to inquire thoroughly into" the alleged problem. Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991) (cleaned up). It appears that the only time Evans's concerns were addressed was on the Friday before trial, when the district court asked the prosecutor to make the trial exhibits available to Evans for his review. But this limited relief failed to address the full scope of Evans's repeated concerns.

-15-

There is little doubt that Evans made his unfortunate situation worse by his own in-court behavior. And it is well within the district court's discretion to require adherence to rules and procedures, and to determine that some evidence is simply not relevant. But for whatever reason, Evans's pretrial concerns were never addressed. Without an inquiry into those complaints and a more fulsome exploration into the probative value of Evans's planned testimony, the record is insufficient to warrant excluding his testimony altogether.

Accordingly, I respectfully dissent from Parts III and V of the court's opinion. I concur in Part II and would not reach the issues raised in Part IV and VI.

———————————————