# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3512
_____

United States of America

*Plaintiff - Appellee*

v.

Raphael Raymond Nunn

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 24, 2025
Filed: December 4, 2025
_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury convicted Raphael Nunn of kidnapping, bank fraud, and aggravated identity theft. The district court[1] imposed a sentence of 288 months, varying upwards from the advisory sentencing guidelines range. Nunn appeals, arguing that

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Dulce J. Foster, United States Magistrate Judge for the District of Minnesota.

the district court erred in failing to suppress his statements from a custodial interview and in permitting a spontaneous in-court identification at trial. Nunn also challenges the substantive reasonableness of his above-guidelines sentence. We affirm.

## I. Background

Nunn's convictions arise from three incidents involving three different victims—C.L., J.T., and S.E. First, on January 8, 2022, a man robbed C.L. at gunpoint in a retail store's parking area. As C.L. sat down in her car's driver's seat, the man opened the driver's-side door, holding a handgun. The man put the gun to C.L.'s head and stole her purse, which contained her debit and credit cards. Someone later used those cards at several stores without C.L.'s authorization. Police obtained surveillance footage of a man making these unauthorized transactions. Second, on August 9, 2022, a man stole J.T.'s backpack. The backpack contained J.T.'s debit and credit cards. J.T. later learned that someone used one of those cards at two businesses without her authorization. Third, on September 13, 2022, a man kidnapped S.E. in a parking garage. As S.E. exited her car after parking, the man, wearing a mask and carrying what appeared to be a gun, ordered her back into the driver's seat and sat down in the backseat behind her. The man ordered S.E. to drive to a bank to withdraw cash for him from her bank accounts. After she withdrew $1500, the man ordered S.E. to drive to a park, where he instructed her to exit the car. She later retrieved the car at the opposite end of the park.

While investigating S.E.'s kidnapping, law enforcement identified Nunn as the perpetrator in the three incidents and arrested him. Police then requested a custodial interview with Nunn regarding the C.L. robbery. Nunn agreed to the interview. Officers began the interview by advising Nunn of his *Miranda* rights. Nunn stated that he understood those rights and signed a written waiver of them. During the interview, Nunn admitted that he was the individual shown in surveillance footage using C.L.'s bank cards. When police asked whether Nunn robbed C.L., Nunn chuckled and said, "I think I should get a lawyer, dude"—to which an officer interjected, "okay,"—and Nunn continued, with no additional

-2-

prompting or questioning, "I used cards, I admit that. I used the cards, I purchased the cards at a gas station." The interview continued for another twenty minutes, and Nunn did not again suggest that he should have a lawyer.

Nunn was charged with kidnapping, bank fraud, and aggravated identity theft. Before trial, Nunn moved to suppress statements from the custodial interview, arguing that his statement, "I think I should get a lawyer, dude," was an invocation of his *Miranda* rights. The magistrate judge denied this motion, reasoning that Nunn's purported invocation was not clear and unambiguous. The district court adopted the magistrate's order. At trial, the Government introduced Nunn's statements from the interview. Further, at trial, C.L. testified and spontaneously identified Nunn as her assailant. Nunn failed to object to C.L.'s in-court identification.

The jury found Nunn guilty on all counts. The Presentence Investigation Report ("PSR") calculated a total offense level of 34 and a criminal history category of II. The PSR determined Nunn's advisory sentencing guidelines range to be 168 to 210 months' imprisonment followed by a mandatory minimum consecutive sentence of 24 months' imprisonment.

At sentencing, however, the district court varied upwards and imposed a total sentence of 288 months. The district court explained that Nunn posed an "escalating" danger to the public and that there was a "very significant" need to protect the public from him. The district court emphasized Nunn's "shockingly lengthy and nonstop criminal record," noting that: Nunn had sixty-two prior felony theft-related convictions; he had been sentenced to terms of imprisonment at least twenty times; his longest consecutive term of imprisonment was from November 2002 to March 2021; he incurred many disciplinary infractions while incarcerated; and he committed the offenses in this case within one year of his release—while he was still on parole. The district court also considered mitigating factors, describing Nunn's upbringing as "tragic" and recognizing Nunn's expected age upon release.

Nunn appeals, arguing that the district court erred in denying his motion to suppress and in permitting C.L.'s in-court identification. Nunn also argues that the district court imposed a substantively unreasonable sentence. We reject these arguments and affirm his conviction and sentence.

## II.  Discussion

### A.  The Motion to Suppress

We first address whether the district court properly denied Nunn's motion to suppress the statements from his custodial interview. "We apply a mixed standard of review to the denial of a motion to suppress evidence: the district court's legal conclusions are reviewed de novo while the factual findings underlying those conclusions are reviewed for clear error." *United States v. Lander*, 144 F.4th 1058, 1063 (8th Cir. 2025). Whether Nunn invoked his right to counsel under *Miranda v. Arizona*, 384 U.S. 436, 469-70 (1966) is a factual determination which we review for clear error. *See United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007). Here, Nunn waived his *Miranda* rights at the outset of the custodial interview. The district court did not clearly err in finding that Nunn did not subsequently invoke those rights.

If a suspect requests an attorney during a custodial interrogation, police must stop interrogating the suspect "until counsel has been made available to him, unless the accused himself initiates further communication . . . with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). But "[o]fficers are only required to cease questioning if a suspect's request for an attorney is clear and unambiguous." *United States v. Mohr*, 772 F.3d 1143, 1145-46 (8th Cir. 2014). For example, in *Mohr*, the statement "I think I should get [a lawyer]" was not "an unequivocal invocation of his right to counsel." 772 F.3d at 1146; *see also Davis v. United States*, 512 U.S. 452, 462 (1994) (determining that the phrase "maybe I should talk to a lawyer" was not an unambiguous request for counsel).

-4-

The district court did not clearly err in determining that Nunn's statement, "I think I should get a lawyer, dude," was not an unambiguous invocation of the right to counsel. This case is similar to *Mohr* and *Davis*. Indeed, Nunn used the same language—"I think I should get . . ."—that we found to be ambiguous in *Mohr*. Nunn emphasizes that the circumstances surrounding a purported invocation are relevant to assessing its ambiguity. But the circumstances surrounding Nunn's purported invocation only made it more ambiguous—not less. Nunn chuckled before suggesting that he should have a lawyer and then proceeded almost immediately, and without prompting or further questioning by officers, to state that he "used [C.L.'s] cards."

Nunn argues that this case is similar to *Wood v. Ercole*, 644 F.3d 83 (2d Cir. 2011), where the Second Circuit found that the suspect's statement, "I think I should get a lawyer," was, in context, an unambiguous request for counsel. *See id.* at 91. But *Wood* does not compel a finding that the district court here clearly erred. "In various contexts, 'I think' could be . . . subsumed into an ambiguous statement." *Id.* at 92 n.7. In *Wood*, unlike here, the suspect did not immediately continue speaking after making the purported request for counsel. *See id.* at 91. And "the immediate circumstances indicate[d]" that the suspect "intended his words' plain meaning." *Id.* at 92 n.7. Here, conversely, Nunn's purported invocation could reasonably be interpreted as an effort to cabin the inculpatory effect of his subsequent admission that he used C.L's bank cards. Indeed, the fact that Nunn chuckled before making the purported request suggests that the request was not altogether a serious one.

The district court did not clearly err in concluding that Nunn's purported request was not unambiguous; therefore, it did not err in denying Nunn's motion to suppress.

## B.  C.L.'s Identification

We next address whether the district court erred when it admitted C.L.'s in-court identification. Because Nunn failed to object at trial to the identification, we

review its admission for plain error. *See United States v. House*, 823 F.3d 482, 487 (8th Cir. 2016). To prevail, Nunn must prove that "there was (1) error; (2) that was plain; and (3) that affects [his] substantial rights." *See id.* We then only correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation modified).

Nunn argues that C.L.'s in-court identification was so suggestive and unreliable that it violated his due process rights. Nunn asks that we apply the two-step "reliability analysis," derived from *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972), to determine whether due process prohibited the admission of C.L.'s in-court identification. We have observed that the law is currently unsettled as to whether courts must apply the reliability analysis to admit an in-court identification. *See United States v. Evans*, 908 F.3d 346, 352 (8th Cir. 2018); *United States v. Shumpert*, 889 F.3d 488, 490-91 (8th Cir. 2018) (recognizing a circuit split in light of *Perry v. New Hampshire*, 565 U.S. 228, 241 (2012)). Nunn argues, however, that recent case law indicates that courts must apply the reliability analysis to admit an in-court identification, and the Government fails to address this question. But even assuming—without deciding—that the reliability analysis applies, we conclude that admitting C.L.'s identification was not plain error.

To assess an identification procedure under the two-step reliability analysis, we first determine whether the procedure was "impermissibly suggestive." *United States v. Harper*, 124 F.4th 1094, 1099 (8th Cir. 2025); *United States v. Rundell*, 858 F.2d 425, 426 (8th Cir. 1988). If it was, we consider the totality of the circumstances to determine if the procedure "created a very substantial likelihood of irreparable misidentification." *Harper*, 124 F.4th at 1099; *United States v. Donelson*, 450 F.3d 768, 773 (8th Cir. 2006). Here, however, we need not proceed to this second step because it is not plain that the in-court identification was impermissibly suggestive.

Previously, when we applied a reliability analysis to an in-court identification, we observed that there was "inherent" suggestiveness "in the witnesses' knowing that appellant was the sole defendant charged with the [crimes]." *Rundell*, 858 F.2d

at 427 (1988); *see also United States v. Davis*, 103 F.3d 660, 670-71 (8th Cir. 1996) (recognizing the "potential[ly] suggestive nature" of an in-court identification where the defendant is the only African-American man sitting at counsel table).  But we have also determined that an in-court identification procedure is not *impermissibly* suggestive where, as here, the defendant "did not request special seating or object to the ethnic composition of the courtroom at the time of the identification" and "the witnesses' identifications were open to attack on cross-examination."  *See United States v. Murdock*, 928 F.2d 293, 297 (8th Cir. 1991).  At minimum, then, there is reasonable dispute whether C.L.'s identification was impermissibly suggestive.  Therefore, any error in admitting the identification was not plain.  *See United States v. Barthman*, 919 F.3d 1118, 1121 (8th Cir. 2019) (noting that a plain error is one that is not subject to "reasonable dispute").

## C.  Nunn's Sentence

Finally, we address whether the district court imposed a sentence that was substantively unreasonable.  We review the district court's sentencing decision for an abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors."  *United States v. Miner*, 544 F.3d 930, 932 (8th Cir. 2008).  Here, after considering the 18 U.S.C. § 3553(a) factors, the district court varied upwards from the advisory sentencing guidelines range and imposed a sentence of 288 months.  We "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."  *Gall*, 552 U.S. at 51.  "It will be the unusual case when we reverse a district court sentence— whether within, above, or below the applicable Guidelines range—as substantively unreasonable."  *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (citation modified).  This is no such unusual case.

Nunn argues that the district court inappropriately weighed the § 3553(a) factors by inadequately considering his difficult upbringing and advanced age. The district court expressly considered these points. The district court, however, emphasized the seriousness of Nunn's offense and the need to protect the public from him. "In varying, a district court is permitted to consider whether the guidelines range adequately reflects the seriousness of the offense, affords adequate deterrence, and protects the public." *United States v. Ross*, 29 F.4th 1003, 1008 (8th Cir. 2022) (citation modified). Further, the district court "has wide latitude to weigh the relevant factors and assign some factors greater weight than others in determining an appropriate sentence."[2] *United States v. Black*, 992 F.3d 703, 706 (8th Cir. 2021) (citation modified). The district court did not abuse its discretion in how it weighed the mitigating factors.

Nunn also argues that the district court inappropriately relied on his criminal history and the short length of time between his release from prison and the crimes in this case. In support, Nunn argues that (1) the sentencing guidelines already account for these factors; (2) he has no violent criminal history or charges for related offenses; and (3) his prior convictions occurred over twenty years ago. These arguments are unpersuasive. The district court explained that the guidelines did not account for the "shockingly lengthy and nonstop" nature of Nunn's criminal history. Nunn, the court explained, had sixty-two prior felony theft-related convictions and had been sentenced to terms of imprisonment at least twenty times. And regardless, "factors that have already been taken into account in calculating the advisory Guidelines range can nevertheless form the basis of a variance." *United States v. Stoner*, 795 F.3d 883, 885 (8th Cir. 2015). Further, the district court explained that its concern regarding Nunn's criminal history was, in part, driven by the "escalating" danger he poses to his community. Finally, as the district court noted, Nunn was

_____

[2]Although Nunn suggests otherwise, the district court similarly had wide latitude to consider its findings that Nunn's offenses were "premeditated" and "geographically widespread." Nunn offers no factual evidence or case law to undermine the district court's determination that these facts exacerbated the seriousness of Nunn's offenses.

incarcerated for nearly the entire twenty years since his previous conviction, and during his incarceration, he incurred many disciplinary infractions. The district court did not abuse its discretion in considering his criminal history and recent release from prison.

Because we find no abuse of discretion in the district court's sentencing decision, we need not evaluate the district court's alternative reasoning that Nunn's sentence could be warranted as an upward departure under U.S.S.G. § 4A1.3(a)(1).

### III.  Conclusion

For the foregoing reasons, we affirm.

_____